1

2

3

4

5

6            IN THE UNITED STATES DISTRICT COURT FOR THE

7                    EASTERN DISTRICT OF CALIFORNIA

8

9   JAMAR JAMES EVANS,              )      No. CV-F-07-126 OWW/DLB
                                     )
10                                   )      MEMORANDUM DECISION GRANTING
                                     )      DEFENDANT'S MOTION FOR
11              Plaintiff,           )      SUMMARY JUDGMENT (Doc. 41)
                                     )
12         vs.                       )
                                     )
13                                   )
    ATWATER POLICE DEPARTMENT,       )
14                                   )
                                     )
15              Defendant.           )
                                     )
16  _____ )

17         On December 7, 2006, Plaintiff Jamar James Evans, *proceeding

18  in pro per*, filed a Complaint against the Atwater Police

19  Department in the Merced County Superior Court.  The action was

20  removed to this Court.

21         The Complaint "is brought for damages and other appropriate

22  relief under 42 USC § 1983 for violation of the plaintiff's

23  federal civil rights by the defendants [sic], whose actions were

24  taken under color of state law."  The Complaint alleges:

25               7.  On or about December 1, 2006, plaintiff
                 was arrested by defendant and charged under
26               section PC415(3) and PC602(L).  In arresting

                                  1

the plaintiff, defendant Snyder, used physical force which was clearly excessive in light of the circumstances existing at the time of the arrest.

8.   Plaintiff alleges that the discretionary arrest of plaintiff, by defendant Snyder was in direct violation of section 42 USC § 1983. Plaintiff alleges that on December 1, 2006 that [sic] he had requested for a store clerk to call the police to report violent behavior of said store clerk.   Plaintiff alleges that when the defendant Atwater Police Department arrived that he was asked to sit on the curb of the store front.

9.   Plaintiff alleges that after he had identified himself by driver's license and explaining that he did not believe the matter warranted or had exacerbated to the need of plaintiff sitting on the curb; [sic] Officer Snyder exited the Valero Station at Bellvue and Shaffer and commanded the other officer to arrest the plaintiff.

10.   Plaintiff alleges that when he asked why he was being arrested Officer Snyder stated: 'Kelly has placed you under a citizen's arrest and for saying that you were going to kill her.'   Plaintiff was searched for weapons, asked to place his hands of the top of his head, spread his legs, and then hand cuffed [sic].

11.   Defendant, Atwater Police Department, used excessive force with the intent to inflict unnecessary harm upon the plaintiff and such use of force caused physical and mental injuries to the plaintiff.

12.   Plaintiff alleges that his arrest by the defendant, Atwater Police Department, with the use of excessive force was in violation of his right under the Fourth Amendment of the United States Constitution to be free from unreasonable arrest and his right under the Fourteenth Amendment of the United States Constitution to due process of law. Plaintiff's arrest was made under color of authority of defendant, Atwater Police Department, as a police officer for the City

2

of Atwater.

13.  Plaintiff alleges that the violation of his constitutional rights was caused by the implementation of a custom, policy, or official act of defendant, City of Atwater.

14.  Plaintiff alleges that on or about August 8, 2006 that he had filed an exhaustion of administrative remedies complaint after being harassed and detained by the Atwater Police Department for Jay-Walking.  On November 22, 2006, plaintiff had a face-to-face meeting with Sergeant Mike Keeler about the situation.  Plaintiff alleges that defendant has decided that the complaint is resolved without a resolution.

15.  Plaintiff has suffered damages in the amount of ($20,000,000.00) in lost wages and in the amount of ($3000.00) in additional out-of-pocket expenses, incurred as a result of his arrest with excessive force.  In addition, plaintiff has suffered humiliation and emotional distress as a consequence of being arrested with excessive force. Pursuant to 42 USC § 1983, plaintiff seeks an award of attorney's fees and costs incurred in bringing this action.

Wherefore, plaintiff seeks ($100,000,000,000.00) in damages, together with such relief as the court may deem appropriate.

On February 4, 2008, Defendant filed a motion for summary judgment.  Defendant noticed the motion for hearing on March 10, 2008.  By Minute Order filed on February 5, 2008, the hearing was continued to March 24, 2008.  By Minute Order filed on March 10, 2008, the hearing on the motion again was continued to April 7, 2008.

Plaintiff has not filed a written opposition to the motion for summary judgment.  On March 12, 2008, Plaintiff filed a

3

motion for leave to file an Amended Complaint.  On March 18, 2008, after the time to file an opposition to the motion for summary judgment had expired, Plaintiff filed a motion for extension of time to respond to Defendant's motion for summary judgment.  Essentially, Plaintiff sought leave to amend to allege only state law tort claims against Defendant and thereby obtain remand of this action to the Merced County Superior Court.  By Order filed on March 24, 2008 (March 24 Order), both motions were denied (Doc. 52).  Leave to amend was denied because Plaintiff has not demonstrated "good cause" within the meaning of Rule 16, Federal Rules of Civil Procedure and, even if he had demonstrated good cause, Plaintiff has not demonstrated that leave to amend should be granted under Rule 15(a).  Because leave to amend was denied, Plaintiff's motion for extension of time to file an opposition to the motion for summary judgment was denied as moot. Plaintiff's opposition to the motion for summary judgment was due on March 14, 2008.  No explanation was provided why an opposition could not have been timely filed.  At the hearing of the motion for summary judgment Plaintiff appeared telephonically at his own instance and without timely utilizing and obtaining advance permission to do so from the Court.   At the April 7, 2008 hearing on the motion for summary judgment, Plaintiff was permitted to present oral arguments concerning the application of California Governmetn Code § 945.3 and was fully heard.  *See discussion infra.*

     A.   <u>GOVERNING STANDARDS</u>.

1    Summary judgment is proper when it is shown that there

2  exists "no genuine issue as to any material fact and that the

3  moving party is entitled to judgment as a matter of law."

4  Fed.R.Civ.P. 56.  A fact is "material" if it is relevant to an

5  element of a claim or a defense, the existence of which may

6  affect the outcome of the suit.  *T.W. Elec. Serv., Inc. v.*

7  *Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th

8  Cir.1987).  Materiality is determined by the substantive law

9  governing a claim or a defense.  *Id*.  The evidence and all

10 inferences drawn from it must be construed in the light most

11 favorable to the nonmoving party.  *Id*.

12    Even though Plaintiff has not filed an opposition to

13 Defendant's motion as required by Rule 56-260, Local Rules of

14 Practice, summary judgment may not be granted on that ground

15 alone.  *See Henry v. Gill Industries, Inc.*, 983 F.2d 943, 950

16 (9th Cir.1993).  The initial burden in a motion for summary

17 judgment is on the moving party.  The moving party satisfies this

18 initial burden by identifying the parts of the materials on file

19 it believes demonstrate an "absence of evidence to support the

20 non-moving party's case."  *Celotex Corp. v. Catrett*, 477 U.S.

21 317, 325 (1986).  The burden then shifts to the nonmoving party

22 to defeat summary judgment.  *T.W. Elec.*, 809 F.2d at 630.  The

23 nonmoving party "may not rely on the mere allegations in the

24 pleadings in order to preclude summary judgment," but must set

25 forth by affidavit or other appropriate evidence "specific facts

26 showing there is a genuine issue for trial."  *Id*.  The nonmoving

party may not simply state that it will discredit the moving

party's evidence at trial; it must produce at least some

"significant probative evidence tending to support the

complaint." *Id*. A plaintiff's verified complaint may be

considered as an affidavit in opposition to summary judgment if

it is based on personal knowledge and sets forth specific facts

admissible in evidence. *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14

(9th Cir.2000). As explained in *Nissan Fire & Marine Ins. Co. v.*

*Fritz Companies*, 210 F.3d 1099, 1102-1103 (9th Cir.2000):

> The vocabulary used for discussing summary
> judgments is somewhat abstract. Because
> either a plaintiff or a defendant can move
> for summary judgment, we customarily refer to
> the moving and nonmoving party rather than to
> plaintiff and defendant. Further, because
> either plaintiff or defendant can have the
> ultimate burden of persuasion at trial, we
> refer to the party with and without the
> ultimate burden of persuasion at trial rather
> than to plaintiff and defendant. Finally, we
> distinguish among the initial burden of
> production and two kinds of ultimate burdens
> of persuasion: The initial burden of
> production refers to the burden of producing
> evidence, or showing the absence of evidence,
> on the motion for summary judgment; the
> ultimate burden of persuasion can refer
> either to the burden of persuasion on the
> motion or to the burden of persuasion at
> trial.
>
> A moving party without the ultimate burden of
> persuasion at trial - usually, but not
> always, a defendant - has both the initial
> burden of production and the ultimate burden
> of persuasion on a motion for summary
> judgment ... In order to carry its burden of
> production, the moving party must either
> produce evidence negating an essential
> element of the nonmoving party's claim or
> defense or show that the nonmoving party does
> not have enough evidence of an essential

element to carry its ultimate burden of
persuasion at trial ... In order to carry its
ultimate burden of persuasion on the motion,
the moving party must persuade the court that
there is no genuine issue of material fact
....

If a moving party fails to carry its initial
burden of production, the nonmoving party has
no obligation to produce anything, even if
the nonmoving party would have the ultimate
burden of persuasion at trial ... In such a
case, the nonmoving party may defeat the
motion for summary judgment without producing
anything ... If, however, a moving party
carries its burden of production, the
nonmoving party must produce evidence to
support its claim or defense ... If the
nonmoving party fails to produce enough
evidence to create a genuine issue of
material fact, the moving party wins the
motion for summary judgment ... But if the
nonmoving party produces enough evidence to
create a genuine issue of material fact, the
nonmoving party defeats the motion.

In *Carmen v. San Francisco Unified School District*, *supra*, 237
F.3d at 1031, the Ninth Circuit held:

[T]he district court may determine whether
there is a genuine issue of material fact, on
summary judgment, based on the papers
submitted on the motion and such other papers
as may be on file and specifically referred
to and facts therein set forth in the motion
papers.  Though the court has discretion in
appropriate circumstances to consider other
materials, it need not do so.  The district
court need not examine the entire file for
evidence establishing a genuine issue of
material fact, where the evidence is not set
forth in the opposing papers with adequate
references to that it could conveniently be
found.

The question to be resolved is not whether the "evidence
unmistakably favors one side or the other, but whether a fair-
minded jury could return a verdict for the plaintiff on the

7

evidence presented." *United States ex rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir.1995).  This requires more than the "mere existence of a scintilla of evidence in support of the plaintiff's position"; there must be "evidence on which the jury could reasonably find for the plaintiff."  *Id.* The more implausible the claim or defense asserted by the nonmoving party, the more persuasive its evidence must be to avoid summary judgment."  *Id.*

B.   **DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS.**

**DUF 1**: The incident giving rise to this litigation occurred on December 1, 2006.

**DUF 2 & 3**: On December 1, 2006, Jamar Evans visited the convenience store located at the Valero service station, 100 East Bellvue Road, Atwater, California.

**DUF 4**: Kelly Miller, employed at the Valero service station, was working as a sales clerk on December 1, 2006, when Jamar Evans entered the store.

**DUF 5**: Jamar Evans lived behind the service station and was a frequent customer at the convenience store.

**DUF 6**: During his December 1, 2006, visit to the Valero convenience store, Evans became irritated due to delay in making his purchase.

**DUF 7**: Evans made comments to Kelly Miller about the delay.

**DUF 8**: Kelly Miller reported that the comments made by Evans were threatening.

1    **DUF 9**: After the comments were made to Miller by Evans,
2    Miller demanded that Evans leave the premises.

3          **DUF 10**: Evans did not leave as requested.

4          **DUF 11**: When Evans did not leave the store, Miller told
5    Evans that the police would be called if he did not leave the
6    property.

7          **DUF 12**: Evans replied that he would wait outside, and
8    remained on the Valero property.

9          **DUF 13**: Evans waited for the police to arrive.

10         **DUF 14**: When Officer Snyder of the Atwater Police
11   Department arrived, Evans was still on Valero property.

12         **DUF 15 & 16**: Officer Snyder contacted Evans and started
13   his investigation.  Officer Snyder also made contact with Miller.

14         **DUF 17**: During Officer Snyder's investigation, Kelly
15   Miller effectuated a citizen's arrest of Evans for threatening to
16   kill her in violation of California Penal Code § 415(3) and for
17   trespass in violation of California Penal Code § 602(l).

18         **DUF 18**: Officer Snyder took Evans into custody under
19   the citizen's arrest effected by Kelly Miller.

20         **DUF 19**: Evans was taken into custody without incident.

21         **DUF 20**: Evans did not resist arrest.

22         **DUF 21**: Evans fully cooperated with Officer Snyder.

23         **DUF 22**: No force was used to take Evans into custody.

24     In support of DUF 22, Defendants refer to Evans' deposition
25   testimony:

26          Q.   When you were pat searched, did the

1        officer injure you in any way?

2        A.  No.

3        Q.  When you were pat searched, did the
         officer do anything to cause you pain?
4
         A.  No.
5
         Q.  When the handcuffs were placed on you
6        wrist [sic], did the officer do anything to
         cause you pain?
7
         A.  You know, squeezed the handcuffs really,
8        really tight.  I was in the back seat of the
         car.  I had, you know, the welts and
9        everything on my arm, on my wrist.

10       Q.  When you were placed in the handcuffs,
         did you feel the handcuffs were too tight?
11
         A.  Uh-huh.  And I asked them to loosen them,
12       and it was like we're just going down to the
         Atwater jail which is right down the street
13       is what they explained to me, so just deal
         with it until you get there.  And I said I'm
14       not going to say no more.

15       ...

16       Q.  As Officer Snyder escorted you to his
         patrol vehicle, did he touch you in any way
17       as he walked you to the vehicle?

18       A.  Just that police assistance to the car,
         head under the thing.  I don't want to be
19       NYPD Blue crime unit or whatever.  I don't -
         I don't - he placed me in the car.  I was
20       escorted to the car.  He had a hand on me.

21       Q.  As he escorted you to the car, did he do
         anything to cause you pain?
22
         A.  No.
23
         Q.  As he helped you into the vehicle, did he
24       do anything to cause you pain?

25       A.  No.

26       Q.  As he helped you into the vehicle, did he

                              10

1          do anything to cause you pain?

2          A.  No.

3          Q.  As he helped you into the vehicle, did he
           do anything rough with you?
4
           A.  No.
5
           ...
6
7          Q.  As you were escorted to the vehicle, was
           Officer Snyder rough with you in any way?

8          ...

9          A.  The handcuffs were way too tight and I
           was just placed in the vehicle.  I'm just
10         emotionally distressed at this point.

11         ...

12         Q.  From the time that the handcuffs were
           placed on you until they were removed, did
13         you ever - did you complain more than the
           single time about them being too tight?
14
           A.  Absolutely not.
15
           Q.  How long did you have the handcuffs on?
16
           ...
17
           A.  About 40 minutes.
18
           ...
19
           Q.  Once you got to the Atwater Police
20         Department, Officer Snyder help you out of
           the vehicle or did you get out under your own
21         power?

22         A.  He helped me out.

23         Q.  As he helped you out of the vehicle, did
           he do anything to cause you pain?
24
           A.  No.
25
           ...
26

                              11

1      Q.   As Officer Snyder walked you into the
Atwater Police Department, did he do anything
2      to cause you pain?

3      A.   No.

4      ...

5      Q.   When the Latino officer took you to the
cell with the bathroom, did he handle you in
6      a rough manner?

7      A.   I remember he scared me to death because
I thought he was going to do something for me
8      banging on the door for him having stood
there.   He came with the attack posture and I
9      was - I just felt immediately threatened by
him, and I remember like, hey, I just have to
10     use the bathroom, you turned around,
whatever.   And I don't think that he touched
11     me or tried to handcuff me or anything like
that.   He just opened the door, stood back,
12     and then I walked out and he guided me to a
cell which was in between the middle cell.
13     So there was - you know, three cells and he
guided me to the last cell in the corridor.
14

15     Q.   And he never attacked you?

16     A.   He didn't attack me.

17     Q.   Did he do anything to cause you pain?

18     A.   Sitting there about to have my bladder
bust and wouldn't open the door.

19     Q.   Anything else?

20     A.   That's it.

21     ...

22     Q.   What made you believe that your wrists
were injured as a result of the handcuffs
23     being too tight?

24     A.   I can exaggerate and I can say that I do
have carpal tunnel because you can see all
25     the paperwork that I do, but just the welts,
you know, the indents ... on my wrists from
26     the handcuffs were on my wrist all the while

1                         **that I was there.  They were still there.  I**

                       **mean I don't know.  I don't thing that's so**

2                         **uncommon. [DT 153-157; 161-162; 164-165; 167]**

3        **DUF 23**: **After being taken into custody, Evans was**

4  **transported to the Atwater Police Department.**

5        **DUF 24**: **Evans was charged on December 1, 2007 with**

6  **violating California Penal Code §§ 415(3) and 602(l).**

7        **DUF 25**: **Evans was appointed a public defender.**

8        **DUF 26**: **The underlying criminal matter is still**

9  **pending.**

10        **DUF 27**: **Plaintiff's lawsuit names only the Atwater**

11  **Police Department as a defendant.**

12        **DUF 28**: **The Complaint alleges a single claim - a right**

13  **to recover damages under 42 U.S.C. § 1983.**

14        **DUF 29**: **To support his Section 1983 claim, Evans**

15  **alleges excessive force was used during his arrest in violation**

16  **of the Fourth and Fourteenth Amendments to the United States**

17  **Constitution.**

18        **DUF 30**: **The Complaint fails to allege facts indicating**

19  **how the Atwater Police Department's alleged policies have**

20  **anything to do with Evans' claimed deprivation and resulting**

21  **damages.**

22        **DUF 31**: **The only reference in the Complaint to a policy**

23  **is the conclusory statement "... custom, policy, or official act**

24  **of the City of Atwater."**

25        **DUF 32**: **Evans alleges in his Complaint that a cause of**

26  **his constitutional deprivation resulted from a "... custom,**

policy, or official act of the City of Atwater."

**DUF 33**: The allegation in Evans' Complaint regarding a "... custom, policy, or official act of the City of Atwater" causing Evans to suffer a deprivation of his constitutional rights is conclusory and unsupported by any fact.

**DUF 34**: Evans has not and cannot establish any facts that show a policy of the City of Atwater that caused him to suffer any constitutional deprivation.

**DUF 35**: Evans has not and cannot establish any facts that show a custom, procedure, or official act causing a deprivation.

As support for DUF 34 and 35, Defendant refers to Plaintiff's January 2, 2008 deposition:

> Q.  Let's go back to the Notice of Deposition and documents.  Request number eight asks for documents evidencing, illustrating or describing any Atwater Police Department custom in use on - it says December 12th, 2006, it should say December 1st, 2006, in which any officer's conformance cause you to suffer a constitutional deprivation.  Do you have any documents that are responsive to that category?
>
> A.  I don't have any documents.
>
> Q.  Are you aware of the existence of any documents that would show a [sic] Atwater Police Department custom that was in use on December 1st, 2006 which conformance would cause you to suffer a constitutional deprivation?
>
> A.  I don't have any documents.
>
> Q.  Are you aware of any custom that was in use on December 1st, 2006 in which the conformance with the custom would cause you a

14

1          constitutional deprivation?

2          A.   Yes.

3          Q.   What custom are you aware of?

4          A.   Arresting customers on hearsay, arresting
           citizens of Atwater based on hearsay.
5
           Q.   Anything else?
6
           A.   That would probably be it.
7
           Q.   Request number nine asks for documents
8          evidencing, illustrating or describing any
           Atwater Police Department policy in effect on
9          December 1st, it says the 12th, but you know
           we're talking about the 1st of 2006, in which
10         any officer's conformance caused you to
           suffer a constitutional deprivation.   Did you
11         bring any documents with you responsive to
           that request?
12
           A.   I don't have any documents.
13
           Q.   Are you aware of the existence of any
14         documents responsive to that request?

15         A.   I'm not quite certain, but I believe that
           their policies for effecting an arrest based
16         on a citizen's arrest would probably show
           what their policy is in a situation like
17         that.   I don't have a copy or any evidence
           illustrating it.
18
           Q.   Do you know if there is any document that
19         exists that would show any Atwater Police
           Department policy in effect on December 1st,
20         2006 in which the conformance would cause a
           constitutional violation?
21
           A.   It would probably be contained within
22         their training manuals.

23         Q.   Do you know if it exists though?

24         A.   I don't know if it exists because I
           haven't received a copy of it.
25
           Q.   Do you contend that there was some
26         Atwater Police Department policy in effect on

                              15

1    December 1st, 2006 in which the conformance
     with the policy would cause you a
2    constitutional deprivation.

3    A.  I would just make an assumption.

4    Q.  Don't want you to assume.

5    A.  Right.  So I would not assume anything
     and say that I don't have evidence and I
6    don't know what their policy is.

7    Q.  Number ten or request number ten asks for
     documents evidencing, illustrating or
8    describing any Atwater Police Department
     procedure in effect on December 12th, 2006,
9    which we know we're talking about December
     1st, 2006, in which any officer's conformance
10   caused you to suffer a constitutional
     deprivation.  Do you have any documents that
11   fit that category?

12   A.  I have the police report and that would
     be the only documented evidence that I have
13   of the procedures that they followed to cause
     me a constitutional deprivation.

14
     Q.  Do you contend that the police report
15   contains information or a description of
     facts which would indicate a procedure was
16   followed that caused you a constitutional
     deprivation?

17
     A.  Accepting the hearsay statement of Kelly
18   Miller and immediately just arresting me on
     the words that she stated.

19
     Q.  Anything else?
20
     A.  I don't think they followed the procedure
21   correctly in effectuating the arrest because
     when I was arrested the police officers
22   walked back into the store and Kelly walked
     over to the police car with the citizen's
23   arrest warrant.  She was alone and basically
     could, you know, say whatever she wanted, do
24   whatever she wanted.  She walked to the car,
     she says, Jamar, I'm placing you under
25   citizen's arrest.  There were no witnesses or
     no one standing by her.  So she basically
26   took on the posture of a police officer and

                            16

the police - two police officers that were there inside of the store.

...

Q.  And we've talked about any documents that you believe exist that would evidence, illustrate or describe any Atwater Police Department policy in effect on December 1st, 2006 in which any officer's conformance caused you to suffer a constitutional deprivation, and that's the police report, correct?

A.  Correct.

Q.  And you're not aware of any other documents that would fit this category, correct?

A.  Correct.

Q.  Are you aware of any Atwater Police Department procedure that was in effect on December 1st, 2006?

A.  The call response.  Kelly called, they respond.  I don't know.  I'm not being facetious, but that was the procedure that they had followed.  Kelly called the police, they responded.

Q.  Right.  I understand that's what happened, but are you aware of any procedure that was in effect by the police department on December 1st, 2006?

A.  No. [DT 89-93; 95-96]

DUF 36: The Complaint does not name any Atwater police officers as defendants.

DUF 37: The Complaint names a single defendant, the Atwater Police Department.

DUF 38: The Complaint does not name any fictitious defendants.

1      DUF 39: The Atwater Police Department is the law

2 enforcement agency of the City of Atwater.

3      DUF 40: The City of Atwater is a general law city

4 existing under the laws of the State of California.

5      DUF 41: The Complaint alleges that "... defendant

6 Atwater Police Department was, and is, a municipal corporation or

7 local government duly organized under the laws of the State of

8 California ...."

9      DUF 42: Evans did not plead compliance with the

10 California Government Claim presentation requirement, nor did he

11 offer an excuse for not complying.

12      DUF 43: Evans did not submit a government tort claim to

13 the Atwater Police Department or the City of Atwater prior to

14 commencing this lawsuit.

15      DUF 45: Evans did not plead any "policy maker" was

16 responsible for his alleged damages.

17   C.   MERITS OF MOTION.

18      1.   Application of *Monell*.

19   Because the Complaint does not name any defendants other

20 than the Atwater Police Department, Defendant asserts that

21 Plaintiff's claim is limited to municipal liability under Section

22 1983.[1]

23   Local government entities and local government officials

24

25      [1]Although the proper Defendant in this action is the City of

26 Atwater, Defendant did not move for substitution of the proper
Defendant and did not seek summary judgment on this ground.

18

acting in their official capacity can be sued for monetary, declaratory, or injunctive relief, but only if the allegedly unconstitutional actions took place pursuant to some "policy statement, ordinance, or decision officially adopted and promulgated by that body's officers...." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).  Alternatively, if no formal policy exists, plaintiffs may point to "customs and usages" of the local government entity.  *Id*.  A local government entity cannot be held liable simply because it <u>employs</u> someone who has acted unlawfully.  *Id*. at 694.  *See also Haugen,* 351 F.3d at 393 ("Municipalities cannot be held liable under a traditional respondeat superior theory. Rather, they may be held liable only when "action pursuant to official municipal policy of some nature caused a constitutional tort.... [T]o establish municipal liability, a plaintiff must prove the existence of an unconstitutional municipal policy.").

To prevail in a civil rights claim against a local government under *Monell*, a plaintiff must satisfy a three-part test:

> (1)  The local government official(s) must have intentionally violated the plaintiff's constitutional rights;
>
> (2)  The violation must be a part of policy or custom and may not be an isolated incident; and
>
> (3)  There must be a link between the specific policy or custom to the plaintiff's injury.

*Id.* at 690-92.  There are a number of ways to prove a policy or custom of a municipality.  A plaintiff may show (1) "a

19

1  longstanding practice or custom which constitutes the 'standard
2  operating procedure' of the local government entity;" (2) "the
3  decision-making official was, as a matter of state law, a final
4  policymaking authority whose edicts or acts may fairly be said to
5  represent official policy in the area of decision;" or (3) "the
6  official with final policymaking authority either delegated that
7  authority to, or ratified the decision of, a subordinate."
8  *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005).
9  The Ninth Circuit has held that a municipal policy "may be
10  inferred from widespread practices or evidence of repeated
11  constitutional violations for which the errant municipal officers
12  were not discharged or reprimanded."  Id.

13      A municipality may still be liable under *Monell* for a single
14  incident where: (1) the person causing the violation has "final
15  policymaking authority;" (2) the "final policymaker" "ratified" a
16  subordinate's actions; or (3) the "final policymaker" acted with
17  deliberate indifference to a subordinate's constitutional
18  violations.  *Christie v. Iopa*, 176 F.3d 1231 (9th Cir. 1999).

19      Defendant argues that it is entitled to summary judgment on
20  this claim because the Complaint alleges no facts from which it
21  may be inferred that Plaintiff's alleged constitutional injury
22  was caused by any custom or policy of the Atwater Police
23  Department.

24      It is well established in the Ninth Circuit that an
25  allegation based on nothing more than a bare averment that the
26  official's conduct conformed to official policy, custom or

practice suffices to state a *Monell* claim under Section 1983 for purposes of Rule 12(b)(6), Federal Rules of Civil Procedure.  *See Karim Panahi v. L.A. Police Dept.*, 839 F.2d 621, 624 (9th Cir. 1988); *Shah v. County of L.A.*, 797 F.2d 743, 747 (9th Cir. 1986); *Guillory v. County of Orange*, 731 F.2d 1379, 1382 (9th Cir. 1984).  That the Complaint does not allege facts to support the conclusory allegation of custom or policy does not *ipso facto* entitle Defendant to summary judgment on this claim.

Defendant has carried its burden of production explained in *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, *supra,* 210 F.3d at 1102-1103.  Defendant, through Plaintiff's deposition testimony, has shown that the Plaintiff has no evidence of any custom, policy, practice or procedure of the Atwater Police Department caused any use of excessive force in Plaintiff's arrest.  Plaintiff presented nothing at the April 7, 2008 hearing from which it may be inferred that Plaintiff has any evidence to support liability under *Monell*.  Further, Plaintiff's deposition testimony establishes as a matter of law that no excessive force was used to effect the arrest of Plaintiff on December 1, 2006.[2]

D.   <u>PLAINTIFF'S ORAL OPPOSITION</u>.

---

[2] Even though no state law claims are alleged in the Complaint, Defendant moves for summary judgment on the ground that they are barred by Plaintiff's failure to comply with the claim requirement of the California Government Claims Act and on the ground that Officer Snyder is immune from liability for false arrest or false imprisonment when he took Plaintiff into custody based on Kelly Miller's citizen's arrest, *Kinney v. County of Contra Costa*, 8 Cal.App.3d 761 (1970).  No state law claims for relief are alleged in the Complaint and Officer Snyder is not named as a defendant.  Summary judgment on these grounds is unnecessary.

During the April 7, 2008 hearing on Defendant's motion for summary judgment, Plaintiff was permitted to present oral argument in opposition to the motion, notwithstanding Plaintiff's failure to timely oppose the motion.  *See* Rule 78-230(c), Local Rules of Practice: "No party will be entitled to be heard in opposition to a motion at oral arguments if opposition to the motion has not been timely filed by that party."

Plaintiff argued that the federal court lacks jurisdiction to hear his Section 1983 action.  Plaintiff relied on California Government Code § 945.3.  Because the criminal case against him did not terminate in his favor until after Plaintiff filed this action, Plaintiff contends that Section 945.3 precluded him from bringing this action until then.

Plaintiff's position is without merit.  California Government Code § 945.3 provides:

> No person charged by indictment, information, complaint, or other accusatory pleading charging a criminal offense may bring a civil action for money or damages against a peace officer or the public entity employing a peace officer based upon conduct of the peace officer relating to the offense for which the accused is chargeed, including an act or omission in investigating or reporting the offense or arresting or detaining the accused, while charges against the accused are pending before a superior court.
>
> Any applicable statute of limitations for filing and prosecuting these actions shall be tolled during the period that the charges are pending before a superior court.
>
> ...
>
> Nothing in this section shall prohibit the

filing of a claim with the board of a public
entity, and this section shall not extend the
time within which a claim is required to be
presented pursuant to Section 911.2.

In *Harding v. Galceran*, 889 F.2d 906 (9th Cir.1989), *cert.
denied,* 498 U.S. 1082 (1991), the Ninth Circuit held:

[A]lthough section 945.3 may not prohibit a
potential plaintiff from bringing a section
1983 claim against a peace officer while
criminal actions are pending, section 945.3's
tolling provision may still apply to toll the
limitations period while criminal actions are
pending against the potential plaintiff.

. . .

. . . [W]e conclude that the provision of
section 945.3, which absolutely prohibits a
party from bringing a civil action against a
peace officer while state criminal charges
are pending against that party, is contrary
to the purposes of section 1983.
Accordingly, as applied here, the prohibition
in paragraph one of section 945.3 must fall
under the Supremacy Clause.

*Id.* at 908.

*Harding* establishes that the pendency of Plaintiff's
criminal proceedings did not preclude Plaintiff from filing his
Section 1983 complaint and does not negate federal jurisdiction
over Plaintiff's Section 1983 action.

Plaintiff also intimates that the pendency of the criminal
proceedings contravenes the requirement that he first timely and
fully comply with the claim requirement of the California
Government Claim Act before he can allege state law tort claims
against Defendant.  Plaintiff essentially seeks reconsideration
of the March 24 Order that denied him leave to amend for, among

23

other reasons, futility because Plaintiff's proposed Amended

Complaint did not allege timely and complete compliance with the

state tort claim requirement.

Plaintiff's position is belied by the final paragraph of

Section 945.3.  The failure to file a tort claim within the

statutorily prescribed period may result in dismissal of an

action.  *See* Witkin, 3 California Procedure, § 247 (4th Ed.).

At the hearing Plaintiff made a confused argument that he

had recently filed a tort claim with Defendant's counsel.

Plaintiff made no showing that he complied with the government

claim presentation requirements *before* commencing this lawsuit.

Consequently, Plaintiff's belated attempt to file a tort claim

does not negate summary judgment for Defendant and does not

compel reconsideration of the March 24 Order.[3]

---

[3] In the Summary of Pleadings section in the Scheduling
Conference Order filed on June 27, 2007 (Doc. 16), it is stated:

> 5.  Plaintiff states that on April 27, 2007,
> Sergeant Mike Wheeler, who is alleged to be a
> major actor in the abuse at the Atwater Police
> Department, came to Plaintiff's house to
> arrest him on a warrant that named Plaintiff
> as an 'alias.'  Plaintiff states that he was
> further harassed and harangued.  Plaintiff
> state that when he asked to review the warrant
> for his arrest, he was told by Wheeler, 'Who
> does he think he is?  He thinks he's some sort
> of street lawyer or something!'  Plaintiff
> states that he was handcuffed in front of his
> home for nearly thirty minutes when dispatch
> returned confirmation that Plaintiff was
> warrantless, and the suspect was already in
> state custody.

The Scheduling Conference Order further states: "The parties do not
presently contemplate filing any amendments."  During Plaintiff's

24

1

**CONCLUSION**

2      **For the reasons stated above:**

3      **1.   Defendant's motion for summary judgment is GRANTED;**

4      **2.   Counsel for Defendant shall prepare and lodge a form of**

5 **order and judgment consistent with this Memorandum Decision**

6 **within five (5) days following the date of service of this**

7 **decision.**

8 IT IS SO ORDERED.

9 Dated:   **April 8, 2008** _____     _____ **/s/ Oliver W. Wanger** _____
                                        UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21 _____

22 **deposition taken on January 2, 2008, Plaintiff testified that he is**
**"also alleging that on August 8, 2006, approximately 7:46 p.m. that**
23 **the   claimant   was   harassed   and   arrested   or   detained   with**
**unreasonable force under the objective reasonableness standard**
24 **citing Graham v. Connor (1989) 490 US 386, comma, 104 L.Ed.2d 443,**
**comma, 109 S. period, court, period, 1865." [DT 89].  Plaintiff has**
25 **not sought leave to amend to add either set of allegations to the**
**complaint in this action.   Discovery in this action closed in**
26 **January, 2008.   These   claims   are not properly asserted in this**
**action.**

25